UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

IN RE                                              )
                                                   )
VAL R. COVERSTONE and          )    Case No. 09-02059-TLM
TERESE D. COVERSTONE,          )
                                                   )    Chapter 13
            Debtors.                        )
_____ )

**MEMORANDUM OF DECISION**
_____

Before the Court for confirmation is the amended chapter 13[1] plan of Debtors Val and Terese Coverstone ("Debtors"), Doc. No. 76 ("Plan"). The chapter 13 trustee ("Trustee") objects to confirmation of the Plan under § 1325(b).[2] This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052, 9014.

**FACTS**

Debtors filed a joint chapter 7 petition on July 15, 2009. They later converted their case to one under chapter 13 and filed a chapter 13 plan. *See* Doc.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Code"), and all rule references are to the Federal Rules of Bankruptcy Procedure 1001–9037.

[2] Trustee asserts several other objections to confirmation. Because the Court will deny confirmation based on the § 1325(b) disposable income objections, *see infra*, it need not address or otherwise reach Trustee's additional arguments related to charitable contributions, good faith under § 1325(a)(3), and other matters. Moreover, given the economic significance of the § 1325(b) issues, many of these other disputes may very well drop by the wayside should Debtors propose a confirmable amended plan.

MEMORANDUM OF DECISION - 1

Nos. 26, 28 & 31.[3]  The chapter 13 Plan currently before the Court for confirmation, which is the third plan filed by Debtors, proposes monthly payments of $400 over 60 months, resulting in a total funding of $24,000.  *See* Doc. 76 ¶ 1.1.  Of that $24,000, $5,500 is to be paid to Debtors' counsel for attorney's fees and $2,400 is dedicated to the payment of Trustee's administrative fees.  *See id.* ¶ 3.  The Plan further proposes to pay Debtors' priority tax debt in equal monthly installments over the term of the Plan.  *Id.*[4]  Additionally, in response to an objection to confirmation by secured creditor JPMorgan Chase Bank, N.A., Debtors have stipulated to amend the Plan through a confirmation order to reflect the payment, through the Plan, of $3,417.80 to JPMorgan Chase for prepetition arrearages.  *See* Doc. Nos. 90 & 91.[5]  After payment of attorney's fees, trustee's administrative expenses, the $3,417.80 payment to JPMorgan Chase, and Debtors' priority tax debt, the Plan leaves less than $5,000 available for nonpriority unsecured creditors, who hold approximately $90,000 in claims.[6]

---

[3]  The Court takes judicial notice of the filings of record in Debtor's bankruptcy case. *See* Fed. R. Evid. 201.

[4]  The Internal Revenue Service filed a proof of claim for $7,516.33 of which it claimed $6,341.33 was entitled to priority.  Claim No. 6-1.  In addition, Debtors scheduled the Idaho State Tax Commission as a creditor holding a $1,500 priority unsecured claim.  *See* Doc. No. 19 at 14 (Schedule E).

[5]  The Plan also provides that Debtors will pay certain secured debts directly to creditors outside of the Plan.  These include a $32,902.93 debt secured by a 2007 Lincoln Mark LT pickup truck, a $34,090.59 debt secured by a 2009 Lincoln MKX sport utility vehicle, and a $408,723.39 debt secured by Debtors' residence.  *See* Doc. No. 76 ¶ 6.1.

[6]  Debtors scheduled $89,359.35 in unsecured nonpriority claims, *see* Doc. No. 19 at
(continued...)

MEMORANDUM OF DECISION - 2

Debtors also filed a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"). Their most recent Form 22C, Exs. 109 & 202, discloses total current monthly income of $11,809.18, comprised of Debtors' respective salaries ($6,330.05 and $3,186.82), $99.17 in pension and retirement income, and a $1,304.76 "Retirement Incentive" payment.

At hearing, it was established that Val Coverstone[7] receives a gross monthly pension benefit of $4,125.29 based on his participation in a defined benefit plan offered by Ford Motor Company ("Ford"), his former employer. *See* Ex. 103. This pension benefit has three components — (1) a "non-contributory benefit" of approximately $100, (2) a "contributory benefit" of a little over $2,700, and (3) a "temporary benefit" of $1,304.76.[8] *See* Ex. 103. After deductions, Val receives a net benefit of about $3,250. *See id*. While Debtors included Val's non-contributory and temporary benefits in the calculation of their current monthly income on Form 22C (as $99.17 in "pension and retirement income" and a $1,304.76 "retirement incentive" payment), they did not include the contributory

---

[6] (...continued)
15–17, and creditors filed proofs of claim for unsecured nonpriority claims totaling $91,546.87.

[7] For clarity and ease of reference the Court will at times refer to Debtors by their first names.

[8] Val is entitled to a "Temporary Benefit" in conjunction with his early retirement from Ford, ending at age 62 plus 1 month or the date he is awarded unreduced Social Security Disability benefits, if earlier. *See* Exs. 114 at p. 24, and 221.

MEMORANDUM OF DECISION - 3

benefit portion.

According to their Form 22C, Debtors have a household of six, which includes Debtors, Debtors' adult daughter Britney, and Britney's three minor children. Britney and her three children moved in with Debtors sometime in early June 2009, after Britney filed her own joint bankruptcy and divorced her husband. Although Britney was employed at the time of her bankruptcy and divorce, her income alone was insufficient to meet the financial needs of her and her three children. As a result, she and her husband surrendered their home in the bankruptcy, and Britney and the children moved to Boise to live with Debtors.

When Britney arrived in Boise she had no employment and little savings. She and her children were thus required to rely on Debtors for financial support. Eventually, in November 2009, Britney secured employment as a counselor in a local government office, earning approximately $1,910 per month. In addition, in October 2009, Britney began receiving court-ordered monthly child support payments of $914.92 from her ex-husband, though the payments were not always timely made. Britney testified that she uses her income to pay for her car, auto insurance, groceries, a cell phone, a storage unit, day care, out-of-pocket medical and dental costs,[9] clothing, and other expenses. Britney does not pay rent to Debtors or otherwise contribute to Debtors' mortgage payments, nor does she help

---

[9] Britney indicated that her out-of-pocket medical expenses were fairly low given her children are covered as dependents under her father's health insurance.

MEMORANDUM OF DECISION - 4

pay utilities.

According to their Form 22C, after deducting expenses allowed for above-median income debtors with a household of six, Debtors are left with no monthly disposable income.[10] However, Debtors' most recently filed Schedules I and J, *see* Exs. 212 & 213, which include on the income side the contributory pension benefit Debtors omitted from Form 22C, show net monthly income of $400.85, just enough to meet their proposed monthly Plan payment.

## DISCUSSION AND DISPOSITION

Trustee objects to confirmation of Debtors' Plan on the basis that it does not commit all of Debtors' projected disposable income to the payment of unsecured creditors as required by § 1325(b). Specifically, Trustee contends Form 22C does not accurately reflect Debtors' current monthly income because it excludes a portion of Val's pension income. Additionally, Trustee asserts, relying on the Supreme Court's decision in *Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464 (2010), that Britney's securing stable employment and receiving regular child support payments constitute significant, known changes in Debtors' circumstances that require consideration of Debtors' actual income and expenses, as reflected in Schedules I and J, to determine whether the Plan complies with § 1325(b).

---

[10] Debtors' Form 22C at line 59 shows a monthly disposable income of negative $1,595.51. Exs. 109 & 202.

MEMORANDUM OF DECISION - 5

### A. Pension Income

Section 1325(b) requires that a chapter 13 plan commit all of a debtor's "projected disposable income" to be received during the plan term to payment of unsecured creditors when there is an objection to confirmation and the plan does not provide for the payment of unsecured creditors in full. *See* § 1325(b)(1). Determination of a debtor's "disposable income" begins with the calculation of the debtor's "current monthly income" or "CMI." *See* § 1325(b)(2).[11]

CMI is a statutorily defined term meaning "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during" the six full months preceding the filing of the bankruptcy petition. Section 101(10A)(A). It also includes "any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)," but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity, and payments to victims of international terrorism. Section 101(10A)(B).

---

[11] "Disposable income" is defined as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended" for "maintenance or support," business expenditures, and certain charitable contributions. Section 1325(b)(2).

MEMORANDUM OF DECISION - 6

Here, Trustee and Debtors dispute whether all of Val Coverstone's pension from Ford should be included in the calculation of Debtors' CMI. Relying on this Court's decision in *In re Cram*, 414 B.R. 674 (Bankr. D. Idaho 2009), Debtors contend that the contributory benefit portion of the pension payments Val received from Ford during the six-month look-back period is excluded from CMI because that income was "received" by Val not when he was paid the benefit, but rather sometime preceding the six-month period when amounts were deducted from his earnings and contributed into the pension plan.

*Cram* addressed the issue of whether chapter 13 debtors were required to include in CMI a distribution from a 401(k) account made during the six months preceding the filing of their bankruptcy. After examining the existing authorities, this Court concluded that the funds held in the debtors' 401(k) account were "received" as income when they were earned and deposited into that account, which was some unspecified period of time preceding the six-month CMI period. Consequently, the Court held that the subsequent distribution from the 401(k) account during the CMI period was not "income . . . the debtor receive[d]" for purposes of § 101(10A)(A). *Id.* at 681 (agreeing with pertinent analysis and holdings of *Simon v. Zittel*, 2008 WL 750346 (Bankr. S.D. Ill. Mar. 19, 2008), and *Zahn v. Fink (In re Zahn)*, 391 B.R. 840 (8th Cir. BAP 2008)). Debtors argue that the monthly contributory benefit received in this case is akin to the 401(k) distribution in *Cram*. The Court disagrees.

MEMORANDUM OF DECISION - 7

Val's contributory pension benefit under the Ford retirement plan is factually distinguishable from the 401(k) withdrawal in *Cram*. The pension plan does allow participating employees to withdraw previously contributed funds, with interest. *See* Ex. 214. While such withdrawals would likely be treated similar to the 401(k) distribution in *Cram*, the contributory benefit Val received under the pension plan was not such a withdrawal. Rather, Val's contributory benefit under the pension plan is calculated using a complex algorithm, of which his contributions are but one factor. *See* Ex. 214. Thus, while Val's contributions to the pension plan (totaling $20,939.02 plus $15,440.35 in interest, *see* Ex. 103) were put into the general retirement fund from which the benefits of all eligible plan participants and beneficiaries are paid, it is clear from the record that the majority of the contributory benefit Val received (and continues to receive) was contributed by Ford. *See* Ex. 214. Based on these facts, the Court concludes the contributory pension benefit received by Debtors during the six-month CMI period was "income" for purposes of § 101(10A)(A).

### B.    Britney's Contributions to Household Expenses

Trustee also contends Britney's contribution to household expenses stemming from her post-petition employment and receipt of child support payments should be considered in determining Debtors' projected disposable income under § 1325(b). She argues that Britney's contribution, though arising post-petition, is a known or virtually certain change in Debtors' circumstances that

MEMORANDUM OF DECISION - 8

under *Lanning* allows Trustee to challenge, and the Court to examine, Debtors' actual income and expenses in determining whether Debtors are using all of their available projected disposable income to fund the Plan.

Often, the financial affairs of nondebtor members of a debtor's household are irrelevant in determining the CMI and the projected disposable income of the debtor. *See* § 101(10A)(A) ("'[C]urrent monthly income' means the average monthly income from all sources that *the debtor receives* (or in a joint case the debtor and the debtor's spouse receive).") (emphasis added). However, there is an exception where a household member pays for household expenses of the debtor or dependents of the debtor on a regular basis. Such payments, though possibly never received directly by the debtor, are considered income for purposes of calculating CMI, and in turn "disposable income" and "projected disposable income." *See* § 101(10A)(B) ("'[C]urrent monthly income' . . . includes any amount paid by *any entity other than the debtor* (or in a joint case the debtor and the debtor's spouse), *on a regular basis for the household expenses of the debtor or the debtor's dependents* (and in a joint case the debtor's spouse if not otherwise a dependent.)" (emphasis added); *In re Epperson*, 409 B.R. 503, 507–08 (Bankr. D. Ariz. 2009);[12] *In re Stansell*, 395 B.R. 457, 461–62 (Bankr. D. Idaho). Inclusion of these payments is consistent with the congressional goal of

---

[12] Though *Epperson* was a chapter 7 case involving the debtor's eligibility for relief under § 707(b), its analysis of § 101(10A)(B) is equally applicable in the context of chapter 13.

MEMORANDUM OF DECISION - 9

"ensur[ing] that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Servs., N.A.*, __ U.S. __, 131 S.Ct. 716, 721 (2011). Indeed, by reducing the overall expenses a debtor otherwise would have to pay, regular payments for household expenses of the debtor or his dependents increase the amount of a debtor's income available to pay creditors.

Here, Britney testified that she is now regularly paying for a number of the household expenses — *e.g.*, food, health care, apparel, and child care — of her and her three children. Because Debtors have claimed Britney and her children as dependents, Britney's regular contributions to household expenses would be considered income for purposes of calculating Debtors' CMI had they been made during the six-month look-back period. While Britney began regularly paying for household expenses only *after* Debtors filed their petition, thus excluding those payments from the statutory definition of CMI, her contributions to household expense may nonetheless be accounted for by this Court in determining Debtors' "projected" disposable income under the "forward-looking" approach articulated in *Lanning*. Under *Lanning*, "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Lanning*, __ U.S. at __, 130 S.Ct. at 2478. Because Britney's contributions to household expenses would have been included in CMI had they occurred during the six-month look-back period, and because they constitute a

MEMORANDUM OF DECISION - 10

change in Debtors' income known at the time of the hearing on confirmation, they can be considered when calculating Debtors' projected disposable income.[13]

Although the record before the Court is inadequate to quantify with any accuracy the funds regularly paid by Britney for household expenses, such a determination is unnecessary here.  Trustee has met her burden[14] by showing, per Britney's testimony, that there are regular contributions to pay for household expenses of Debtors' dependents (Britney and the children) being made by Britney.  Such contributions are not accounted for in Debtors' Plan.  The result is that Debtors' Plan fails to commit all of their available income to paying unsecured creditors as required by § 1325(b).[15]

---

[13] This is by no means an absolute.  There may be scenarios where income that would have been included in CMI under § 101(10A) had it been received during the six-month look-back period would not be considered by a court in determining a debtor's projected disposable income.  *See*, *e.g.*, *Meyer v. Scholz (In re Scholz)*, BAP No. EC-10-1153-MkZJu (9th Cir. BAP Mar. 22, 2011) (finding that although benefits received under the Railroad Retirement Act ("RRA") qualified as CMI under § 101(10A), they could not be considered when calculating projected disposable income as it would contravene the RRA's antianticipation clause).

[14] *See Stansell*, 395 B.R. at 463 (explaining that while generally a debtor carries the burden of proving a proposed plan complies with the statutory requirements for confirmation, in the context of an objection under § 1325(b) the objecting party has the initial burden of supporting its objection with satisfactory evidence before the ultimate burden of persuasion shifts to the debtor) (citing *Itule v. Heath (In re Heath)*, 182 B.R. 557, 560 (9th Cir. BAP 1995)).

[15] The inclusion of Britney's contribution to household expenses raises a potential issue not addressed by the parties.  Section 1325(b)(2) expressly excludes from the calculation of disposable income "child support payments [received] . . . for a dependent child . . . to the extent reasonably necessary to be expended for such child[.]"  Some portion of Britney's contributions to the household comes from child support payments received and is clearly expended in support of the dependant children/grandchildren.  The Court need not today resolve the issue of whether some amount should be excluded under § 1325(b)(2).  It is clear that at least some portion of Britney's contributions to household expenses (*e.g.*, those derived from her wage income) must be included in Debtors' projected disposable income.  Because Debtors' Plan accounts for *none* of Britney's contributions to household expenses it fails to commit all of Debtors' projected
(continued...)

MEMORANDUM OF DECISION - 11

The Court will make one other observation. While the evidence presented in this case leads the Court to conclude that at least a portion of Britney's contribution to Debtors' household expenses, a known post-petition change, should be considered under *Lanning* in determining Debtors' projected disposable income, this change in circumstances does not give Trustee *carte blanche* to challenge Debtors' allowed expenses.[16] The Court recently rejected such an argument. *In re Bronson*, 2011 WL 864931, at *3 (Bankr. D. Idaho Mar. 10, 2011) (citing *In re Thiel*, 2011 WL 799779 (Bankr. D. Idaho Mar. 1, 2011)). As this Court explained, a change in circumstances in a debtor's income, while allowing the Court to adjust the income side of the formula to more accurately reflect the debtor's ability to pay going forward, does not permit a wholesale departure from the means test in favor of Schedules I and J. *See id.*; *Thiel*, 2011 WL 799779, at *4–5.

## CONCLUSION

In summary, the Court concludes: (1) that the contributory pension benefit Val Coverstone received during the six-month CMI period constituted "income" for purposes of computing Debtors' CMI; and (2) that Britney's post-petition, regular contribution to Debtors' household expenses is a "known or virtually

---

[15] (...continued)
disposable income to unsecured creditors.

[16] As above-median-income debtors, Debtors' expenses are established by § 707(b)(2), commonly referred to as the "means test." *See* § 1325(b)(3).

certain" change to be considered in establishing Debtors' projected disposable income. Because Debtors' Plan contemplates neither Val's contributory pension benefit nor Britney's contribution to Debtors' household expenses, the Court will deny confirmation.

An order will be entered by the Court in accordance with this Decision.

DATED: April 21, 2011

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13