D. Blair Clark
LAW OFFICES OF D. BLAIR CLARK PLLC
1513 Tyrell Lane, Suite 130
Boise, ID 83706
Phone: (208) 475-2050
Fax: (208) 475-2055
Email dbc@dbclarklaw.com
Idaho State Bar No. 1367
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| In re: | Case No. 09-02059-TLM |
|---|---|
| VAL R. COVERSTONE and TERESE D. COVERSTONE, | Chapter 13 |
| Debtors. | |

### DEBTOR'S MEMORANDUM IN SUPPORT OF CONFIRMATION OF AMENDED PLAN (DOCKET 154) AND IN OPPOSITION TO MOTION TO DISMISS

STATEMENT OF THE CASE:

    This case comes before the Court after the confirmation of the prior Plan was denied. The Trustee has not filed an objection, but did file a Motion to Dismiss on June 1, 2011; as it contains objections, it will be treated as such.

    Unfortunately, she has refused to consider the prior Plan or any modifications. More unfortunately, she has frankly advised counsel in writing that she will not discuss this case with

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 1

M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

him, and that he is not welcome at her office in relation to this Plan. It is apparent that the situation is too polarized for effective negotiated resolution.

Consequently, Debtors have revised the Plan, and their Schedules I and J, based on actual numbers both in the Plan in terms of the current situation, the required payments at various states of the case, and their change in circumstances. After considering all of their options, including a 100% plan payment and surrendering the house (which plan is simply unaffordable) they have revised their budget with retention of the house. This will require further notice and hearing, which Debtors request the Court to set so that the matter may have proper notice.

Should the Plan as amended be confirmed, Debtors are concerned about the Trustee's vindictiveness and her lack of objectivity about this case and them personally. If possible, they would prefer if another Trustee could administer this case during its tenure.

1. NATURE OF THE AMENDED PLAN: The Amended Plan provides for 5 months of $525, 15 months at $400 per month (as was originally proposed) and then the remaining 41 months at $1,151.00 per month. The last three payments will also have 'pickup payments' of $200 each. Attorneys fees previously sought of $16,500 (which itself was a reduction from time actually expended of several thousand dollars) is now reduced to $8,500.00 in order to make this Plan affordable for the Debtors. This will be handled by detailed application and hearing in conformance with the Rules and local practice. The amount stated for counsel fees is a maximum payment.[1]

---

[1] Frankly, counsel has briefed the issue of whether attorneys' fees are part of the "unsecured creditors' pool" for chapter 13 purposes after BAPCPA. This would comport with

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 2
M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

The Plan further provides for cure of a payment arrearage per stipulation with Chase (docket 91), retention of their home with stripping of their second mortgage, retention of their vehicles, and surrender of their Harley-Davidson cycle (which was surrendered in the prior plan and on which stay relief was just obtained).

Supporting documents filed included:

A. An Amended Schedule I and J, with expense allowances compared with the B22C.

B. Amended B22C's for this period and the "Britney period."  This is based on the current financial situation, the tax returns for 2009 and 2010 (which were exhibits in the hearing) and the changes brought on by the moving of both Britney and her children, and Josh as well.  The expense for the $125 per month for Josh as submitted previously remains.  Since Josh has now moved as well, the prior 22C (docket 153) no longer applies.  With respect to the Trustee's accusations that submitting a revised B22C is not proper, Debtors would cite the Court to In re Moore, 446 B.R. 458 (Bankr. D. Colo. 2011), where the Court held that the best way to show change of circumstances is to do exactly that.  In

---

predecent in this Court of In re Bird, 95 IBCR 39, in which Judge Hagan held that attorneys' fees were of a higher priority, and payment of them first, prior to payment of other unsecured claims, even priority claims, was a reasonable classification and should be done.  However, in light of this Court's comments in In re Bronson, 10-01259-TLM, although arguably dicta, it appears to the undersigned that this Court has determined that it is not inclined to follow the line of authority of the decisions in Minahan (394 BR 116) and Puetz, 370 BR 386.  Those cases, and others in that vein, hold that attorneys' fees were properly part of the 'unsecured creditors' analysis.  Bronson appears to follow the reasoning of Wilbur, 344 BR 650 and its progeny that attorneys' fees and priority claims are in addition to general unsecured claims and that the amount in the 22C must be paid to general unsecured claims.  The Plan analysis follows the Wilbur rationale, although counsel respectfully believes that the Minahan authority should be followed.

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 3
M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

explaining the changes wrought by Lanning, the Court was presented with several documents to show change of circumstances. Judge Tallman held "As a procedural matter, the most transparent method of demonstrating compliance with §§ 1325(b)(2) and 707(b)(2) is by filing an amended Form B22C that reflects the debtor's changed circumstances as of the confirmation hearing date."

C. Debtors also submit that consideration of the 2009 and 2010 tax returns complies with both the Lanning decision and that of this Court in In re Meek, 07.2 IBCR 23, which held that "Form 22C will control unless trustees, creditors or debtors challenge that historically calculated income average as unrealistically high or low given the debtor's actual factual circumstances and present evidence to support that claim and substantiate the magnitude of the variation." These figures are virtually identical for both years.

D. A comparison of the Schedule I and J as currently filed, plus the current B22C, shows that the Trustee's analysis is incorrect. In order to base both on ACTUAL numbers, they were recalculated showing income, taxes, and other data from the 2009 tax returns (Ex. 225) and the 2010 returns. There is no "guesswork" in these calculations because they are based on actual documented data, not projections, and reflect the situation shown by Britney's arrival with her family and her subsequent leaving to live elsewhere. Please see the analysis and addenda hereto, which shows the analysis and reasoning for all of the changes on the 22C's and the Schedules I-J.

2. ARGUMENTS PREVIOUSLY MADE AND INCORPORATED. The Amended Plan and this memorandum contain some of the issues that were presented in the prior hearing. Those

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 4
M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

include: the question of tithing; the vehicle payments; the additional support for their disabled adult son, Josh. The rest of the issues are either already resolved or abandoned by the new plan. Debtors are not re-briefing those points, but will rely on their prior submissions.

3.    THE EFFECT OF LANNING. Lanning makes it clear that the forward-looking means test is appropriate in certain circumstances. This is why there were and are two B22C's submitted. They reflect circumstances that existed, and now exist. They show the differences in the payments to unsecured creditors mandated by the "Means Test" analysis. There is nothing incorrect about those calculations. Therefore, the Plan, and the forms, are appropriate and consistent with one another.

      The Trustee professes to advocate Lanning, but in reality is ignoring its impact. The "known factors" test, which the Court analyzed in its Decision on the prior Plan, held that the changes in circumstances ARE to be considered. The Plan, and the 22C's, are done with that in mind.

4.    "GOOD FAITH" ANALYSIS. The Debtors believe that the holding on "good faith" of In re Bronson, 10-01259-TLM, should be held applicable in this case. This Court held that:
" . . ."good faith" is not always an effective talismanic invocation every time a trustee or creditor dislikes something in a debtor's plan. See In re Westing, 2010 WL 2774829, at *3 n.9 (Bankr. D. Idaho July 13, 2010) (citing Matter of Prine, 10 B.R. 87, 81 I.B.C.R. 19 (Bankr. D. Idaho 1981)). This is particularly the case when a debtor's proposal conforms to other Code requirements and it is precisely those provisions that chafe the objector. Section 1325(a)(3) serves an important

purpose, but does not provide a reservoir of unlimited opportunity to rearrange chapter 13 plan proposals. It therefore should be judiciously alleged and pursued by objectors."

This Plan is filed with the full recognition of the <u>Bronson</u> analysis. Secured debt for the first mortgage on the home and the vehicle payments is appropriate, and is considered. Payment of the tax claim is mandatory. Cure of the shortfall on the residence is required by docket 91.

Moreover, as the attached spreadsheet shows, the payments made to unsecured claims are equal to or slightly in excess of those required by both Form 22C's at issue. The Plan, therefore, is completely correct and meets all of the requirements for confirmation.

The "good faith" to which the Trustee will undoubtedly allude is the retention of the home and the vehicles. Those were all subject to the testimony of the Debtors at trial, and the rationale has not changed. However, these were all valid prepetition secured debts, which §707(b)(2)(A)(iii) allows to be considered and retained. The disposable income is calculated in that regard, as required and allowed by §§1325(b)(2) and (3).

5.      "UNREASONABLE DELAY" AND THE TRUE CAUSE. In all due respect to the Trustee's position that it is the Debtors who are guilty of unreasonable delay, the record simply shows the contrary. Her attitude toward this case has always been "my way or the highway." This has no place in this system. The latest–the "don't even come over" response–is the last in a series of actions by the Trustee that show that she is not the least bit interested in working through the issues in this case. She may protest that she's "only doing her job," but this case has demonstrated that she's doing far more than that. Consider the entire debacle over the discovery disputes.

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 6
M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

Had she concentrated on the "big issues" of the nature of the pension income to start with, this case could have proceeded far quicker and more expediently, with a great deal less consternation on all sides.  The Court advised her of this itself by the directive to use 'sniper fire, not a shotgun.'  This shot simply missed the target.

The Standing Trustee Pledge of Excellence states that "Standing Trustees are committed to excellence and to providing a high level of trust and service to chapter 13 debtors and creditors.  Creditors, debtors, attorneys, judges and others who come into contact with Standing Trustees are entitled to service which adheres to the highest standards of professional, moral and ethical conduct."  The Trustee should frankly consider whether or not she has been objective, professional, and otherwise have met the standard owed to these Debtors in this case.

Mr. Coverstone, particularly, has suffered physically from this conduct.  Recently he was hospitalized due to a life-threatening issue brought on by the continued stress, mostly relating to this case.  He is only recently released to go back to work.  <u>This case needs confirmed</u>.  This Plan is filed in good faith.  **It Needs Concluded.**

Therefore, the Debtors and counsel respectfully submit that the Court needs to examine if the Trustee's actions in this case are a major factor in the delays of which she now complains.  This is far beyond "doing her job."  Having required response to each and every issue, even those that were not decided by the Court, has belabored this case, as has her response toward discovery.  This Court does have authority under §327 to examine her actions to determine if a lower compensation rate is warranted, so that more can go to the unsecured claims.  This case

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 7
M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

warrants such an examination. Debtors will make such motion so it can be heard contemporaneously with the hearing on counsel's fees. But her 'bullying' tactics need to stop.

6.     CONCLUSION: Debtors respectfully believe that they have filed a confirmable Plan. The Court should so hold and should confirm this Plan forthwith.

Dated this 7TH day of June, 2011.

LAW OFFICES OF D. BLAIR CLARK PLLC

/S/
D. Blair Clark

CERTIFICATE OF SERVICE

I hereby certify that on this 7TH day of June, 2011, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to the following:

All registered ECF participants, including Kathleen McCallister, Trustee.

/S/
D. Blair Clark

**SUPPLEMENT TO DOCKET 168- FORM B22C** (with Britney and children)
(References are to line numbers in form)

| LINE NUMBER | ENTRY | DATA SOURCE | EXPLANATION |
|---|---|---|---|
| 1(b) | Family size-6 | Debtor's Sched. I-J | Britney was then living with Debtors with her children. |
| 2 | $8,548.50 | Trustee's Ex. 225 | Wages, salaries, tips per 2009 tax return. This is the gross income shown in line 7 of $102,582 divided by 12. The 2010 return is attached to the Declaration of D. Blair Clark and shows wages, salaries, tips of $102,137. |
| 6 (formerly line 9a) | $4,125.29 | Trustee's Ex. 220, 225, Deposit Advices showing slight modifications in benefits and deductions attached. | This is the GROSS pension receipt per Ex. 225 divided by 12.  Prior forms showed NET pension receipt.  Contrary to Trustee's assertions, this is not a "relitigation" of anything.  In this form, the taxes, insurance, etc., will be shown later.  Pension in 2010 is $48,805, and in 2009 was $48,806.   Ex. 220 shows net of $3,257.67.  Current paystubs for the pension are attached. |
| 9 | $500.00 | Ex. 236 | Britney's declaration, attached to the Debtor's Discovery Responses, shows contributions to the household of $400 for food items and $100 for hygiene.  These were to be included per the Court's decision. |
| 11, 14, 20 | $13,173.79 | Trustee's Ex. 225, line 22; Ex. 236, docket 168. | This, Debtors believe, complies with the Court's decision on these points. |
| 15, 21 | $158,085.48 | Ex. 225, line 22; Ex. 236, docket 168. | See above |
| 24A | $1,894.00 | Docket 168 | This reflects also the contribution from Britney |
| 27A | $422.00 | Docket 168 | The allowance for the year of filing was $422. |

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 9

M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

| 30 | $2,168.75 | See supplement to docket 169, infra | See supplement to 169, infra. The tax is based on actual tax returns plus the slight change by the pension plan. These are "known" under Lanning. |
|---|---|---|---|
| 50c | $51.05 | | 50a is the average payment. Payments (not counting tax refunds, but from Debtors only) were $525 for four payments and $400 for 15. The average is $510.53 for the 19 months. |
| 59 | $242.10 | | Amount to go to general unsecured claims under 22C for the period when Britney and the children were living there, WITH a 'contribution' shown from her as per the Court's decision. The original payments were $525.00 for four months and then $400 for 15, as shown in the NDC ledger. Either of those payments to unsecured claims is greater than required under line 59. |

**SUPPLEMENT TO DOCKET 169- CURRENT FORM B22C**
(References are to line numbers in form)

| LINE NUMBER | ENTRY | DATA SOURCE | EXPLANATION |
|---|---|---|---|
| 1(b) | Family size-2 | Debtor's Sched. I-J | Since filing original and supplemental B22C's and Schedule I-J's, Britney has relocated with her children, as has Josh.  The latter was done after filing the previous forms. |
| 2 | $8,548.50 | Trustee's Ex. 225 | Wages, salaries, tips per 2009 tax return. This is the gross income shown in line 7 of $102,582 divided by 12. The 2010 return is attached to the Declaration of D. Blair Clark and shows wages, salaries, tips of $102,137. |
| 6 (formerly line 9a) | $4,125.29 | Trustee's Ex. 220, 225, Deposit Advices showing slight modifications in benefits and deductions attached. | This is the GROSS pension receipt per Ex. 225 divided by 12.  Prior forms showed NET pension receipt.  Contrary to Trustee's assertions, this is not a "relitigation" of anything.  In this form, the taxes, insurance, etc., will be shown later. Pension in 2010 is $48,805, and in 2009 was $48,806.   Ex. 220 shows net of $3,257.67.  Current paystubs for the pension are attached. |
| 11, 14, 20 | $12,673.79 | Trustee's Ex. 225, line 22; current B22C, docket 167. | Total income was $151,388.  This has been altered by the change in Line 9. |
| 15, 21 | $152,085.48 | Ex. 225, line 22; docket 169 | See above.  2010 figure is $150,942.  The changes are because of pension adjustments. |
| 24A | $985.00 | Docket 169 | <u>Allowance</u> is $985.  Food is $537, Housekeeping $66, clothing $262, personal care $55, miscellaneous $165.<br><u>Actual</u> per budget is $980.  Food is $550, clothing $121, laundry $70,  miscellaneous $79, veterinary $80, recreation $80. |
| 27A | $472.00 | Schedule J | Current allowance for line 27A, per February |

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 11

M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

| | | | |
|---|---|---|---|
| | | | 25, 2011 UST tables is $472. The prior allowance was $422. It is undisputed that fuel prices have increased substantially since this case was filed, and under <u>Lanning</u>, "known" changes are able to be considered. Budget item, Sched J, L. 8, is $465. |
| 30 | $2,168.75 | Ex. 225 shows Federal tax of $17,727 and State of $7,013. 2010 returns show $18,066 and $8,056. Average is $25,431, 1/12 being $2,119.25. To this is added $53.60 (the difference between Federal tax of $348.02 and $294.42), less the State tax withheld difference of $4.00 | Tax returns show that the mortgage interest deduction for 2009 was $29,491. For 2010 it was $26,693. Average is $28,092. Adding $28,092 to income would add 25% to Federal per IRS tables+7.8% State, for 32.8%. $26,693*32.8%=$9,214, for $767.84/mo., additional tax. Adding to $2,119.25 totals $2,887.09. Were house to be surrendered, that would have to be the minimum tax in this line. Retaining the house saves $767.84 per month which would be a valid deduction under 22C. The tax of $2,119.25 plus the additional taxes for this years' pension deduction are claimed. |
| 36 | $265.00 | Schedule J shows average health costs of $385.00. Adding 24A to 36 yields $385.00 | Mr. Coverstone's extra medical expenses, as he testified at trial, have been increased by anti-depression medication and counseling, which was and is necessary. Both Debtors testified at trial as to their medical conditions and reasons for their expenses at the time. |
| 50c | $111.80 | | 50a is the average payment of the increased plan payment. 50b shows 10%, so 50c is $111.80. |
| 59 | $640.95 | | Amount to go to general unsecured claims under CURRENT 22C. Docket 168, the 22C for the period when Britney and the children were living there, WITH a 'contribution' shown from her as per the Court's decision, shows disposable income of $242.10. The original payments were $525.00 for four months and |

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 12

M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd

|   |   |   | then $400 for 15, as shown in the NDC ledger. |
|---|---|---|---|

## FURTHER COMMENTS SCHEDULES I-J

| Sch. I, L. 1 | $8,548.50 | Gross pay to Mr. AND Coverstone, per month per Ex. 225 and 2010 returns. The figures are for both family members here and throughout, even though they only show on the Debtor's line. |
|---|---|---|
| Sch. I, L. 6 | $5,425.78 | Net pay to Mr AND Mrs. Coverstone, per month |
| Sch. I, L. 12 | $3,208.07 | Net pension payment to Mr. Coverstone |
| Sch. I, L. 13 | $300.00 | DELETED. This reflects in their 2009 and 2010 tax returns. |

## PLAN ANALYSIS

| *Payments to Unsecured Claims per Analysis* | $31,465.87 |
|---|---|
| *Payments Required, w/Britney, $242.10 * 15* | $3,631.50 |
| *Payments Required w/o Britney, $640.95*41* | $26,278.95 |
| *Shortfall (i.e., unsecured claims receive)* | ($1,555.42) |
| *CONCLUSION:* | *Plan complies with §1325 and 707(b) both for payments "out" and payments "in."* |

DEBTORS' MEMORANDUM IN SUPPORT OF CONFIRMATION– Page 13

M:\MB\mbwork\Blair\Coverstone, Val & Terese\Trial Brief 6-2-11 R1.wpd